IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GREGORY WAYNE CARVER, AIS # 326895, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | CASE NO. 1:26-CV-214-WKW [WO] |
| GWENDOLYN DAVIS, | ) ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

Petitioner Gregory Wayne Carver, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254.  (Doc. # 1.)  Petitioner challenges his 2021 conviction for sexual abuse of a child under the age of 12 and the resulting 40-year sentence imposed by the Circuit Court of Houston County, Alabama.  *See State v. Carver*, CC-2015-000060.00 (Houston Cnty. Cir. Ct.).  As ordered (Doc. # 6), Respondent Gwendolyn Davis, the warden of Easterling Correctional Facility, timely filed an Answer to the petition, along with records of the state-court proceedings.  (Doc. # 13.)  Petitioner filed a reply.  (Doc. # 16.)

Based upon a review of the parties' submissions, an evidentiary hearing is not warranted.  *See* Rule 8, *Rules Governing Section 2254 Cases in the United States District Courts*.  For the reasons set forth below, Petitioner is not entitled to relief

because his petition is time-barred under 28 U.S.C. § 2244(d)(1)(A).  Therefore, the petition will be dismissed with prejudice.  Furthermore, Petitioner will be denied a certificate of appealability.

## II.  SUBJECT MATTER JURISDICTION AND VENUE

Under 28 U.S.C. § 2254(a), federal district courts have the authority to consider an application for a writ of habeas corpus on behalf of an individual in state custody pursuant to a state-court judgment but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." This provision limits authority, rather than conferring it, with habeas jurisdiction established by 28 U.S.C. § 2241.  *See Thomas v. Crosby*, 371 F.3d 782, 787 (11th Cir. 2004).  Under § 2241, federal district courts have the power to grant writs of habeas corpus "within their respective jurisdictions," § 2241(a), when a state-convicted prisoner "is in custody in violation of the Constitution, " § 2241(c)(3). The "in-custody" requirement mandates that the habeas petitioner must "be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) (per curiam).  Furthermore, § 2241(d), referred to as a "venue provision," "gives the petitioner 'the option of seeking habeas corpus either in the district where he is confined or the district where the sentencing court is located.'" *Dobard v. Johnson*, 749 F.2d 1503, 1509–10 (11th Cir. 1985) (Clark, J., dissenting) (citation omitted).

Petitioner was in custody under a state-court judgment when he filed this petition. Additionally, at the time of filing, Petitioner was incarcerated in a state prison located in the Middle District of Alabama under conviction and sentence of a state court in this district. Accordingly, this court has subject matter jurisdiction to consider his petition, and venue is proper.

### III. BACKGROUND

**A.** **State Court Trial Proceedings and Direct Appeal**

In January 2015, Petitioner was indicted for sexual abuse of a child under 12 years of age, in violation of Alabama Code § 13A-6-69.1. (Doc. # 13-2 at 8.) On April 6, 2021, following a trial, the jury returned a guilty verdict. (Doc. # 13-3 at 23.) On June 24, 2021, Petitioner was sentenced as a habitual felony offender to a 40-year term of imprisonment. (*Id.* at 61–62.) On July 8, 2021, Petitioner's trial counsel filed a motion for judgment of acquittal or, in the alternative, a motion for new trial. (*Id.* at 63.) Following a hearing on August 26, 2021, the motion was denied. (*Id.* at 70.) On August 27, 2021, Petitioner's trial counsel filed a notice of appeal to the Alabama Court of Criminal Appeals (ACCA) and a motion to withdraw as counsel. (Doc. # 13-6.)

On direct appeal, Petitioner, represented by appellate counsel, argued (1) that the trial court erred in denying his motion for a continuance to locate potentially exculpatory evidence and a witness (Doc. # 13-7 at 15–17) and (2) that the trial court

3

erred in denying his motion for judgment of acquittal (*id.* at 19–22). On March 4, 2022, the ACCA affirmed the trial court's denial of both motions in an unpublished memorandum decision. (Doc. # 13-9); *see Carver v. State*, 373 So. 3d 245 (Ala. Crim. App. 2022). On April 14, 2022, Petitioner filed an application for rehearing, reasserting the two aforementioned arguments and adding an argument that the trial court erred in not considering his motion for a speedy trial. (Doc. # 13-10.) Petitioner's application for rehearing was denied on April 22, 2022. *State v. Carver*, 377 So. 3d 1085 (Ala. Crim. App. 2022).

On May 5, 2022, Petitioner filed a petition for a writ of certiorari in the Supreme Court of Alabama, arguing that he was denied his right to a speedy trial. (Doc. # 13-11.) The Supreme Court of Alabama denied certiorari without opinion and issued a certificate of judgment on July 8, 2022. (Doc. # 13-12 at 1); *Ex parte Carver*, 385 So. 3d 893 (Ala. 2022). The ACCA also issued a certificate of judgment on July 8, 2022. (Doc. # 13-12 at 3.)

## B.   Post-Conviction Proceedings in State Court

### 1.   *State Habeas Petition (Construed as Petitioner's First Rule 32 Petition)*

On September 8, 2022,[1] Petitioner filed a *pro se* petition, which he styled as a petition for a writ of habeas corpus pursuant to § 15-21-1 to § 15-21-34 of the

---

[1] "Alabama courts have held that a *pro se* incarcerated petitioner/appellant is considered to have 'filed' a Rule 32 petition, a notice of appeal, or a petition for a writ of certiorari when those

Alabama Code, in the Circuit Court of Barbour County, Alabama.  (Doc. # 13-14.)

In his state habeas petition, Petitioner contended that he had been "denied his right

to a speedy trial and [was] being illegally detained by the State."  (*Id.* at 18.)  In its

response, the State moved for the petition to be converted into a Rule 32 petition and

transferred to the Circuit Court of Houston County, Alabama.  (Doc. # 13-15.)  On

November 30, 2022, the State's motion was granted, and the matter was transferred

to the Houston County Circuit Court.  (Doc. # 13-16.)  On December 13, 2022, the

State filed a motion for summary dismissal with attachments, arguing, among other

things, that the petition was precluded under Rule 32.2(a) of the Alabama Rules of

Criminal Procedure because Petitioner could have raised (or already did raise) his

speedy-trial claim at trial and/or on direct appeal.  *See State v. Carver*, CC-2015-

000060.60 (Houston Cnty. Cir. Ct.), ECF No. 6 ("Court's Exhibit A").  Summary

dismissal was granted on December 14, 2022.  *Id.*, ECF No. 8 ("Court's Exhibit B").

On February 10, 2023, Petitioner appealed the summary dismissal of his first

Rule 32 petition to the ACCA.  (Doc. # 13-21.)  On February 23, 2023, an order was

entered by the ACCA, stating that Petitioner's appeal was due to be dismissed

---

documents are given to prison officials for mailing."  *Ex parte Allen*, 825 So. 2d 271, 272 (Ala. 2002).  Absent evidence to the contrary, the court "assume[s] that a prisoner delivered a filing to prison authorities on the date that he signed it."  *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).  Although Petitioner's first Rule 32 petition was not stamped filed in the Barbour County Circuit Court until September 14, 2022 (Doc. # 13-14 at 8), Petitioner dated the petition September 8, 2022 (*id.* at 9, 27).  Therefore, it is assumed that the petition was delivered to prison authorities for mailing on September 8, 2022.

because it was not timely filed and giving him 14 days to show cause why the appeal should not be dismissed.  (Doc. # 13-23.)  Petitioner filed a voluntary dismissal of the appeal on March 7, 2023.  (Doc. # 13-24.)  The ACCA issued an order dismissing the appeal (Doc. # 13-26) and a certificate of judgment (Doc. # 13-25) on March 10, 2023.

### 2.    *Rule 32.1(f) Petition (Construed as Petitioner's Second Rule 32 Petition)*

On April 4, 2023,[2] Petitioner filed a petition pursuant to Rule 32.1(f) of the Alabama Rules of Criminal Procedure, requesting to file an out-of-time appeal of the summary dismissal of his first Rule 32 petition.  (Doc. # 13-29.)  In the State's response to Petitioner's Rule 32.1(f) petition, titled "State's Motion for Summary Dismissal," the State conceded that Petitioner should be allowed to file an out-of-time appeal.  (Doc. # 13-30.)  Thereafter, the State filed a motion to amend its response to Petitioner's Rule 32.1(f) petition, stating that its motion for summary dismissal was submitted in error and that it should have moved the court to grant Petitioner's request to file an out-of-time appeal.  (Doc. # 13-31.)  On June 12, 2023, the Houston County Circuit Court granted Petitioner's Rule 32.1(f) petition and gave Petitioner 30 days to file a notice of appeal.  (Doc. # 13-32.)

---

[2] Although Petitioner's second Rule 32 petition was stamped as filed with the circuit clerk's office on May 11, 2023 (Doc. # 13-29 at 1), Petitioner signed the petition under penalty of perjury and dated it April 4, 2023 (*id.* at 32).  Therefore, Petitioner's second Rule 32 petition is considered filed on April 4, 2023.  *See supra* note 1.

On June 12, 2023,[3] Petitioner appealed the Houston County Circuit Court's December 14, 2022 order summarily dismissing his first Rule 32 petition. (Doc. # 13-33.) In his brief, Petitioner raised three issues: (1) whether the trial court erred in denying his first Rule 32 petition; (2) whether he was denied his right to a speedy trial; and (3) whether the State and trial court erred in not weighing the four speedy-trial factors articulated in *Barker v. Wingo*, 407 U.S. 514 (1972). (Doc. # 13-37 at 14.) The ACCA affirmed the summary dismissal of Petitioner's first Rule 32 petition in an unpublished memorandum decision issued on March 15, 2024.[4] (Doc. # 13-40); *see Carver v. State*, 420 So. 3d 420 (Ala. Crim. App. 2024). Petitioner filed an application for rehearing (Doc. # 13-41), which was denied on April 19, 2024. (Doc. # 13-42); *see Carver v. State*, 425 So. 3d 1046 (Ala. Crim. App. 2024).

Petitioner then filed a petition for a writ of certiorari in the Supreme Court of Alabama, claiming that the ACCA "failed to use Federal Law to decide the issue that [he] was denied a Speedy Trial" and instead "used state law to decide the issue

---

[3] Petitioner dated his notice of appeal June 12, 2023 (Doc. # 13-33 at 2), so it is deemed filed on that date even though it was not stamped as filed with the circuit clerk's office until June 28, 2023 (*id.*). *See supra* note 1.

[4] In affirming the summary dismissal of Petitioner's first Rule 32 petition, the ACCA characterized the right to a speedy trial as "a nonjurisdictional constitutional right that can be waived." (Doc. # 13-40 at 3.) The ACCA also stated, "Constitutional claims that are, or that could have been, raised on appeal are subject to the procedural bars set forth in Rule 32.2." (*Id.* (quoting *Ex parte Sanders*, 792 So. 2d 1087, 1091 (Ala. 2001)).) The ACCA held that, "[b]ecause [Petitioner]'s nonjurisdictional claim was precluded under Rule 32.2(a), summary disposition was appropriate." (*Id.* at 5.)

of a speedy trial, and upheld the State[']s use of preculsionary [sic] rules under Rule 32.2(a)(1)(2)" and that the ACCA "failed to address the issue that the trial court waived its jurisdiction to hold a trial after 180 days."  (Doc. # 13-43 at 7.)  The Supreme Court of Alabama denied certiorari without opinion and issued a certificate of judgment on June 7, 2024.  (Doc. # 13-44 at 2); *see Ex parte Carver*, 427 So. 3d 453 (Ala. 2024).  The ACCA likewise issued a certificate of judgment on June 7, 2024.  (Doc. # 13-44 at 1.)

> **3.**  ***"Motion for Petitioner to Timely File a Rule 32 Petition" (Construed as Petitioner's Third Rule 32 Petition)***

On July 1, 2024,[5] Petitioner filed a "Motion for Petitioner to Timely File a Rule 32 Petition."  (Doc. # 13-47.)  On August 27, 2024, the State filed a response, arguing that the motion should be denied because (1) Petitioner seemed to be requesting to amend his previous Rule 32 petition, which had already been ruled on and appealed; (2) Petitioner appeared to be requesting Rule 32 postconviction relief in the motion but did not properly serve the State and did not complete an *in forma pauperis* declaration; and (3) the trial court lacked subject matter jurisdiction to take any further Rule 32-related action until Petitioner fulfilled the requirements for

---

[5] Petitioner dated the motion July 1, 2024, and certified that he placed the motion in the mail on July 1, 2024. (Doc. # 13-47 at 8).  Accordingly, Petitioner's motion (later construed as his second Rule 32 petition) is deemed filed on July 1, 2024.  *See supra* note 1.

proper filing of a Rule 32 petition (*i.e.*, an *in forma pauperis* declaration or payment of the filing fee and proper service).  (Doc. # 13-49.)

By order dated September 4, 2024, Petitioner was given 21 days to pay the required filing fee or file a request to proceed *in forma pauperis*.  (Doc. # 13-46.) Petitioner filed an *in forma pauperis* declaration and his inmate account statement on September 9, 2024.  (Doc. # 13-51.)  On September 20, 2024, the circuit court entered two orders.  The first order denied Petitioner's request to proceed *in forma pauperis*.  (Doc. # 13-52.)  The second order construed Petitioner's "Motion for Petitioner to Timely File a Rule 32 Petition" as a subsequent postconviction petition under Rule 32 and gave Petitioner 30 days to pay the required filing fee.  (Doc. # 13-53.)  The order expressly warned Petitioner that his case would be dismissed without further order if he failed to pay the required filing fee.  (*Id.* at 6.)  On October 4, 2024, the circuit court received a letter from Petitioner (Doc. # 13-54), which was construed as a motion/response and denied in an order issued on October 7, 2024. (Doc. # 13-57.)  The October 7, 2024 order directed Petitioner to comply with the order issued on September 20, 2024, and pay the filing fee, or his case would be dismissed.  (*Id.*)

On October 22, 2024, Petitioner's third Rule 32 petition was dismissed for failure to pay the filing fee as directed.  (Doc. # 13-58.)  Thereafter, Petitioner filed a *pro se* notice of appeal dated October 22, 2024, but stamped as filed in the ACCA

9

on November 22, 2024.  (Doc. # 13-56.)  On September 15, 2025, the ACCA issued an order dismissing Petitioner's appeal for lack of jurisdiction.  (Doc. # 13-63.)  The ACCA reasoned that "[t]he circuit court never acquired jurisdiction over [Petitioner]'s postconviction petition because [Petitioner]'s in-forma-pauperis request was denied, and [he] failed to pay the filing fee within the reasonable time set by the circuit court."  (*Id.* at 3.)  The ACCA issued a certificate of judgment on October 15, 2025. (Doc. # 13-64.)  On November 10, 2025, Petitioner filed a petition for a writ of mandamus in the Supreme Court of Alabama.  (Doc. # 13-65.)  By order dated January 6, 2026, the mandamus petition was dismissed.  (Doc. # 13-66.)

C.     **The Instant Petition for a Writ of Habeas Corpus, Respondent's Answer, and Petitioner's Reply**

On March 24, 2026,[6] Petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. # 1.)  Petitioner sets forth six grounds for relief.  First, he asserts that he was deprived of his right to a speedy trial.  (*Id.* at 5.)  Second, he claims that the trial court lacked jurisdiction to maintain a detainer, extradite him from Florida, and to convene a trial.  (*Id.* at 7.)  Third, he contends that the State and the trial court "orchestrated a procedure not to follow the Interstate

---

[6] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing."  *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).  Absent evidence to the contrary, the court "assume[s] that a prisoner delivered a filing to prison authorities on the date that he signed it."  *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) (per curiam).  Petitioner signed his petition under penalty of perjury and dated it "3-24-26."  (Doc. # 1 at 17.)  Therefore, even though his habeas petition was not received and docketed by the court until March 26, 2026, his petition is deemed filed on March 24, 2026.

Compact/IAD Act." (*Id.* at 8.) Fourth, he argues that the trial court and the State set up a procedural bar to prevent state and federal courts from reviewing his speedy trial claim, allowing the State to not follow the Interstate Compact Agreement. (*Id.* at 10.) Fifth, he alleges that his trial counsel and his appellate counsel provided ineffective assistance. (*Id.* at 12.) Sixth, he asserts his actual innocence. (*Id.* at 13.)

On April 29, 2026, Respondent filed an answer and exhibits. (Doc. # 13.) Respondent's primary argument is that the petition should be dismissed with prejudice because it is time-barred. (*Id.* at 5, 6–8.) Alternatively, Respondent argues that Petitioner's claims are either unexhausted in state court or unreviewable under 28 U.S.C. § 2254. (*Id.* at 8–10.)

By Order issued on April 30, 2026, Petitioner was directed to file a reply to Respondent's answer. (Doc. # 14.) On May 21, 2026,[7] Petitioner filed a reply. (Doc. # 16.) In his reply, Petitioner argues that his petition "is due a de novo adjudication in this federal court because it is timely and his claims are exhausted in state court and reviewable under Section 2254." (*Id.* at 14.)

---

[7] Petitioner signed his reply under penalty of perjury and dated it the "21st day of May, 2026." (Doc. # 16 at 19.) Pursuant to the prison mailbox rule, *see supra* note 6, Petitioner's reply is deemed filed on May 21, 2026, even though it was not received and docketed until May 26, 2026.

## IV.  DISCUSSION

### A.    <u>The AEDPA's Statute of Limitations</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1).  The one-year limitation period begins when the state-court judgment is considered final, as defined by the AEDPA.  *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).  The AEDPA specifies two alternative dates on which a state-court judgment becomes final:  (1) at the "conclusion of direct review" or (2) upon the "expiration of the time for seeking such review."  § 2244(d)(1)(A).[8]

In *Gonzalez*, the Supreme Court established that § 2244(d)(1)(A)'s text "consists of two prongs" with distinct applications:

> For petitioners who pursue direct review all the way to th[e United States Supreme] Court, the judgment becomes final at the "conclusion of direct review"—when this Court affirms a conviction on the merits or denies a petition for certiorari.  For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"— when the time for pursuing direct review in this Court, or in state court, expires.

565 U.S. at 150.[9]

---

[8] The petition contains no facts that trigger the application of § 2244(d)(1)(B)–(D).

[9] The issue in *Gonzalez* centered on identifying when a judgment becomes final under § 2244(d)(1)(A) if a state petitioner forgoes review in a state's highest court.  565 U.S. at 150. There, the state petitioner pursued a direct appeal to the intermediate state appellate court but did not seek discretionary review in the state's highest court.  *See id.* at 138.  The Supreme Court held

As set out in the recital of the procedural history on direct review, *see* Part III.A, the Alabama Supreme Court denied Petitioner's petition for a writ of certiorari on July 8, 2022.  (Doc. # 13-12 at 1.)   Because that denial would have been reviewable by the United States Supreme Court under 28 U.S.C. § 1257(a), *see Gonzalez*, 565 U.S. at 154, Petitioner falls into the category of petitioners for whom the judgment becomes final at the expiration of the time for seeking certiorari in the United States Supreme Court, *i.e.*, 90 days after the Alabama Supreme Court's decision, even though no certiorari petition was actually filed.  *See Pugh v. Smith*, 465 F.3d 1295, 1299 (11th Cir. 2006) ("[I]f [the prisoner] does not petition the [United States] Supreme Court, the prisoner's conviction becomes final when the time for filing that petition expires.").  Petitioner had 90 days from July 8, 2022—until October 6, 2022—to file a petition for a writ of certiorari in the United States Supreme Court.  *See* Sup. Ct. R. 13.1; *see also* Sup. Ct. R. 13.3 ("The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed . . . .").

Because Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court by October 6, 2022, the one-year limitation period began to

---

that the judgment became final under § 2244(d)(1)(A) when the time for seeking discretionary review in the state's highest court expired under the state court's filing deadlines. *See id.* at 150 ("We . . . agree with the Court of Appeals that because [the petitioner] did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired.").

run the next day—on October 7, 2022. *See Green v. Sec'y, Dep't of Corr.*, 877 F.3d 1244, 1247 n.3 (11th Cir. 2017) ("The limitation period [under § 2244(d)(1)(A)] began to run the day after the conviction and sentence became final . . . ." (citing *San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) (holding that Federal Rule of Civil Procedure 6(a)(1) applies to the calculation of the AEDPA's one-year limitation period and explaining that the limitation period therefore begins to run from the day after the day of the event that triggers the period))).   Absent statutory tolling as outlined below in Part IV.B.1, the AEDPA's one-year limitation period would have expired on October 7, 2023. *See Downs v. Mitchell*, 520 F.3d 1311, 1318 (11th Cir. 2008) (noting that § 2244(d)(1)'s "limitations period expires on the anniversary of the date it began to run").

**B.    Statutory Tolling, Equitable Tolling, and Actual Innocence**

An otherwise untimely petition under 28 U.S.C. § 2254 may be considered only if the petitioner demonstrates either entitlement to tolling or a fundamental miscarriage of justice.   As set forth below, the one-year limitation period was statutorily tolled during the pendency of Petitioner's first and second Rule 32 petitions but was not tolled during the pendency of his third Rule 32 petition. Petitioner has not alleged that equitable tolling applies or that a fundamental miscarriage of justice occurred.

1.   *Statutory Tolling*

Under 28 U.S.C. § 2244(d)(2), the one-year limitation period is tolled during the pendency of "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." After Petitioner's argument is summarized, the extent to which Petitioner's three Rule 32 petitions trigger statutory tolling will be analyzed. As discussed below, the first two petitions afford some tolling; the third affords none; and the resulting statutory tolling is insufficient to render this 28 U.S.C. § 2254 federal petition timely.

a.   **Petitioner's Arguments**

The § 2254 form petition filed by Petitioner required him to address the one-year limitation period if the challenged state-court judgment became final over a year ago. In this space, Petitioner provided a timeline reflecting the date he was arrested to the date he filed the instant § 2254 petition. The relevant portion of Petitioner's timeline (*i.e.*, the portion having to do with the timeliness of his § 2254 petition) is as follows:

<u>TIMELINESS OF PETITION</u>

<u>Days</u>

. . .

Sentencing  June 24, 2021

Direct Appeal  December 8, 2021

Certificate of Judgment SC-2022-0527 – July 8, 2022 (C2. 67)

15

Habeas Corpus – September 8, 2022 (C2. 19–68) – 1st and 2nd Rule 32----- 60

Certificate of Judgment – SC-2024-270 – June 7, 2024
See: A9. pgs 2–3

Motion To Timely File A Rule 32 (C3. 5–17) July 1, 2024 3rd Rule 32------ 14

Certificate of Judgment – SC-2025-0880 – January 6, 2026

2254 Habeas Corpus – March 24, 2026------------------------------------------- 77

Total Number of Days---------------------------------------------------------------- 151

(Doc. # 1 at 16.)  From the timeline, it appears Petitioner is arguing that he only expended 151 days of the AEDPA's one-year limitation period, but Petitioner's calculations are incorrect.

To begin, Petitioner erroneously started the one-year clock on July 8, 2022—the date that the Supreme Court of Alabama denied his petition for a writ of certiorari and issued a certificate of judgment—rather than on October 7, 2022—the day after his conviction and sentence were deemed "final" under the AEDPA.  Although correcting this start date benefits Petitioner, the remaining statutory-tolling calculations discussed below do not.

### b.   The First and Second Rule 32 Petitions (Three Scenarios)

The limitation period was set to begin on October 7, 2022.  However, Petitioner's filing of his first Rule 32 petition on September 8, 2022, stopped the limitations period from beginning to run.[10]  The complicated procedural history

---

[10] Petitioner's conviction and sentence became final under the AEDPA on October 6, 2022, the day the 90-day deadline to file a petition for a writ of certiorari in the United States Supreme Court

16

following the summary dismissal of Petitioner's first Rule 32 petition on December 14, 2022, creates three possible scenarios for calculating the expiration date of the AEDPA's one-year limitation period.

Under scenario one, Petitioner had 42 days, starting on December 15, 2022 (*i.e.*, the day after his first Rule 32 petition was summarily dismissed) to appeal the dismissal. *See* Ala. R. App. P. 4(a)(1). The 42-day deadline expired on January 26, 2023, and, in this scenario, the one-year clock began to run the next day—on January 27, 2023. Petitioner filed an untimely appeal to the ACCA on February 10, 2023. (Doc. # 13-21.) After the ACCA issued an order directing Petitioner to show cause why his appeal should not be dismissed as untimely (Doc. # 13-23), Petitioner moved to voluntarily dismiss his untimely appeal (Doc. # 13-24). On March 10, 2023, the ACCA entered an order dismissing the appeal and issued a certificate of judgment. (Docs. # 13-25, 13-26.) Then, on April 4, 2023, Petitioner filed his second Rule 32 petition, specifically, a Rule 32.1(f) petition requesting to file an out-

---

expired. Because the one-year limitation period had not yet started as of September 8, 2022, Petitioner received no tolling credit for the time between September 8, 2022, and October 7, 2022. However, because Petitioner's first Rule 32 petition remained pending when the one-year limitation period commenced, it tolled the limitation period from the outset. In other words, § 2244(d)(1)(A) starts the clock only when the conviction becomes final, and a state post-conviction petition filed before that date, *i.e.*, while direct review is still ongoing, cannot toll a limitation period that has not yet commenced. *See, e.g.*, *Moore v. Sec'y, Fla. Dep't of Corr.*, 762 F. App'x 610, 618 (11th Cir. 2019) (per curiam) ("The one-year AEDPA statute of limitations did not start running on December 6, 2010 [the date of the expiration of the petitioner's time for seeking review in the U.S. Supreme Court], however, because Moore's Rule 3.850 motion was already pending on that date.").

of-time appeal.  (Doc. # 13-29.)  In this scenario, because Petitioner did not timely appeal the summary dismissal of his first Rule 32 petition and, assuming that the clock stopped upon Petitioner's filing of his second Rule 32 petition, the clock ran for 67 days—from January 27, 2023, to April 4, 2023.

Under scenario two, because Petitioner's Rule 32.1(f) petition (his second Rule 32 petition) requesting to file an out-of-time appeal was ultimately granted, the limitations period was tolled during the pendency of the untimely appeal filed by Petitioner on February 10, 2023.  That is, similar to scenario one, the one-year clock in this scenario began to run on January 27, 2023, upon the expiration of the 42-day deadline for Petitioner to appeal the summary dismissal of his first Rule 32 petition. But in this scenario, the clock stopped upon Petitioner's filing of his untimely appeal on February 10, 2023, meaning the clock had run for 14 days.  Also, in this scenario, the clock ran for an additional 22 days—from the Monday after the date Petitioner voluntary dismissed his untimely appeal (March 13, 2023) until the date he filed his second Rule 32 petition (April 4, 2023).  In total, under scenario two, the clock ran for 36 days.

Under scenario three, because Petitioner's Rule 32.1(f) petition (his second Rule 32 petition) requesting to file an out-of-time appeal was ultimately granted, the limitations period did not begin to run until June 10, 2024—the Monday after the Supreme Court of Alabama denied his petition for a writ of certiorari and issued a

18

certificate of judgment.  That is, in this scenario, the clock did not begin to run until after the final disposition of Petitioner's first and second Rule 32 petitions.

Whether the clock ran for 67 days (scenario one), 36 days (scenario two), or zero days (scenario three), the limitations period was tolled during the pendency of Petitioner's Rule 32.1(f) petition and the ensuing appeal of his first Rule 32 petition. Petitioner's appeal of the summary dismissal of his first Rule 32 petition culminated with the Supreme Court of Alabama denying the petition for a writ of certiorari and issuing its denial and certificate of judgment on June 7, 2024.  (Doc. # 13-44 at 2.) On June 10, 2024, the one-year clock either started (scenario three) or restarted (scenarios one and two).  Under scenario one, Petitioner had 298 days left on the clock.  Under scenario two, he had 329 days left on the clock.  Under scenario three, he had one year left on the clock.

### c.    Petitioner's Third Rule 32 Petition

On July 1, 2024, Petitioner filed a self-styled "Motion for Petitioner to Timely File a Rule 32 Petition."  (Doc. # 13-47.)  The state court construed this motion as a new Rule 32 petition—Petitioner's third such petition.  Critically, the limitations period was <u>not</u> tolled during the pendency of this Rule 32 petition.

The AEDPA tolls the one-year limitation period while a "properly filed" state post-conviction application is pending, *see* 28 U.S.C. § 2244(d)(2), and "an application is '*properly* filed' when its delivery and acceptance are in compliance

19

with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *see also Green v. Sec'y, Dep't of Corr.*, 877 F.3d 1244, 1248 (11th Cir. 2017) ("Under *Artuz*, we look to the state procedural rules governing filings to determine whether an application for state post-conviction relief is 'properly filed.'" (alteration adopted and citation omitted)). "Alabama law requires that a Rule 32 petition 'be accompanied by the filing fee prescribed by law or rule in civil cases in the circuit court unless the petitioner applies for and is given leave to prosecute the petition *in forma pauperis*.'" *Smith v. Comm'r, Ala. Dep't of Corr.*, 703 F.3d 1266, 1270 (11th Cir. 2012) (per curiam) (quoting Ala. R. Crim. P. 32.6(a)).

Petitioner's third Rule 32 petition was not properly filed. As evidenced by the Houston County Circuit Court's order dated September 4, 2024, Petitioner did not pay the filing fee or file an *in forma pauperis* declaration with his Rule 32 petition. (Doc. # 13-46.) After Petitioner submitted his *in forma pauperis* declaration and his inmate account statement (Doc. # 13-51), the court denied his request to proceed *in forma pauperis* and gave him 30 days from the date of the order (September 20, 2024) to pay the filing fee. (Doc. # 13-53.) Petitioner was warned that his case would be dismissed if he failed to pay the filing fee as directed. (*Id.*) During the allotted 30 days, Petitioner sent a letter to the court, which the court construed as a motion/response and denied. (Doc. # 13-57.) In the denial order, the circuit court again warned Petitioner that he needed to comply with the order issued

20

on September 20, 2024, or his case would be dismissed. (*Id.*) Despite the additional warning, Petitioner did not pay the filing fee as directed, and his third Rule 32 petition was dismissed on October 22, 2024. (Doc. # 13-58.) Petitioner appealed the dismissal of his third Rule 32 petition to the ACCA. (Doc. # 13-56.) The ACCA dismissed Petitioner's appeal for lack of jurisdiction, reasoning that "[t]he circuit court never acquired jurisdiction over [Petitioner]'s postconviction petition because [Petitioner]'s in-forma-pauperis request was denied, and [he] failed to pay the filing fee within the reasonable time set by the circuit court." (Doc. # 13-63 at 3.) Petitioner then filed a petition for a writ of mandamus in the Supreme Court of Alabama (Doc. # 13-65), which the Supreme Court of Alabama denied without opinion on January 6, 2026 (Doc. # 13-66). Because Petitioner's third Rule 32 petition was not properly filed, the one-year limitation period was not tolled during its pendency.

### d. Summary

The one-year clock either started (scenario three) or restarted (scenarios one and two) on June 10, 2024. As of June 10, 2024, Petitioner had 298 days left on the clock (scenario one), 329 days left on the clock (scenario two), or one year left on the clock (scenario three). Under scenario one, the limitations period expired on April 4, 2025. Under scenario two, the limitations period expired on May 5, 2025. Under scenario three, the limitations period expired on June 10, 2025. *See Downs*

21

*v. Mitchell*, 520 F.3d 1311, 1318 (11th Cir. 2008) (noting that § 2244(d)(1)'s "limitations period expires on the anniversary of the date it began to run"). But no matter which statutory-tolling scenario is applicable, Petitioner's 28 U.S.C. § 2254 petition, filed on March 24, 2026, is untimely.

### 2.   *Equitable Tolling*

Equitable tolling of § 2244(d)(1)'s one-year limitation period applies where a petitioner "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation and internal quotation marks omitted). Equitable tolling is "an extraordinary remedy" and, as such, is "limited to rare and exceptional circumstances and typically applied sparingly." *Thomas v. Att'y Gen.*, 992 F.3d 1162, 1179 (11th Cir. 2021) (citation omitted). "The petitioner bears the burden of showing that equitable tolling is warranted." *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) (per curiam).

Petitioner has not met his burden of showing that he diligently pursued his rights, particularly when he failed to comply with the circuit court's orders directing him to pay the filing fee so that the court could exercise jurisdiction over his third Rule 32 petition. Petitioner also has not met his burden of showing that extraordinary circumstances prevented him from filing this 28 U.S.C. § 2254 petition on time. Furthermore, the merits-focused arguments in his petition do not satisfy

the standard for equitable tolling because the standard focuses "on the circumstances surrounding the late filing of the habeas petition, rather than the circumstances surrounding the underlying conviction." *Helton v. Sec'y for Dep't of Corr.*, 259 F.3d 1310, 1314–15 (11th Cir. 2001) (per curiam). Simply put, Petitioner's arguments fail to explain why he filed his § 2254 petition late, and he has not met his burden of demonstrating a diligent pursuit of his rights or that extraordinary circumstances prevented his timely filing of his habeas petition so as to warrant equitable tolling.

### 3.   *Fundamental Miscarriage of Justice:  Actual Innocence*

Even where there is no basis for tolling, a petitioner can overcome § 2244(d)(1)'s one-year limitation period where he can show a "fundamental miscarriage of justice." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). The "fundamental miscarriage of justice" exception requires a showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* (citation omitted). "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, . . . or . . . expiration of the [AEDPA] statute of limitations." *Id.* at 386.

The actual innocence exception "is exceedingly narrow," *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1013 (11th Cir. 2012) (per curiam), and requires a petitioner "(1) to present new reliable evidence that was not presented at trial, and

23

(2) to show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence," *id.* at 1011 (cleaned up).  Additionally, a petitioner must show "factual innocence, not mere legal insufficiency." *Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1334 (11th Cir. 2008) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)); *accord McKay v. United States*, 657 F.3d 1190, 1197 (11th Cir. 2011).

Petitioner attempts to assert his actual innocence as a ground for relief, rather than as a way of overcoming the expired limitations period.  (*See* Doc. # 1 at 13.) He contends, in conclusory fashion, that he "could not have been found guilty of these false made up charges if the jury had been presented with the [Child Advocacy Center (CAC)] Forensics Video made by the alleged victim and the sworn statement by [M.O.] (victim[']s mother)."  (*Id.*)  These assertions, standing alone, are insufficient to excuse the untimely filing of his petition.  *See Collins v. Sec'y, Dep't of Corr.*, 809 F. App'x 694, 696 (11th Cir. 2020) (holding that, under binding Eleventh Circuit precedent, a freestanding actual-innocence claim is not cognizable in a non-capital § 2254 petition and therefore cannot, by itself, overcome the AEDPA's one-year statute of limitation) (citing *Raulerson v. Warden*, 928 F.3d 987, 1004 (11th Cir. 2019)).

First, in his § 2254 petition and reply brief, Petitioner has not alleged or argued that the CAC video and the victim's mother's sworn statement are "new reliable

24

evidence."  However, on direct appeal to the ACCA, Petitioner argued that the trial court erred in denying his motion to continue the trial and that the denial of that motion "struck a huge blow to his ability, and his right, to present a defense."  (Doc. # 13-7 at 15; Doc. # 13-9 at 3.)  In affirming the trial court's denial of Petitioner's motion for a continuance, the ACCA noted the following exchange that occurred immediately before Petitioner's trial began:

> "[Defense counsel]:  Judge, I just wanted to address two things.  One was to get on the record – you already made an oral motion – I mean, an order on this based on my oral motion yesterday.  But I was requesting that we pass the case for – to find [M.O.], the mother of this little girl, to give some statements that were contradictory.  I understand your order on that, that we are going ahead.

> "THE COURT:  Yeah, I don't think we have to put that on the record, but that is the case.  The motion will be denied.

> "[Defense counsel]:  Yes, sir.  And the other one, there is some – in some of the documents there, it discusses that there was a video interview of the victim in this case with the Child Advocacy Center that's not – I don't believe it's in the district attorney's hand, and I have not seen it either.  I was also asking to pass the case in order to maybe find a copy of that.  I understand the Court's order on that, as well.

> "THE COURT:  Is there a paper report, a description?

> "[Prosecutor]:  There is.  There is a paper summary written by the forensic interviewer.  However, just for the record, the victim in this case is now 15.  So she's over 12.  So the State will not be able to introduce the video anyway, as a matter of course.

> "And regarding the first motion, which was [M.O.], the State would submit that she's not a relevant witness in regard – she wasn't present when it happened.  So anything that she would have said or anything

would be hearsay anyway.  She wasn't there when the alleged event happened.  So we don't think she's a viable, necessary witness.

"THE COURT:  We are going to proceed with the trial since the CAC interview tape would not be admissible by the State.  And you have the summary, do you not, [defense counsel]?

"[Defense counsel]:  Yes, sir."

(Doc. # 13-9 at 4–5.)  Based on the above exchange, the two evidentiary items Petitioner now claims would have prevented any reasonable juror from finding him guilty were known by the parties and excluded prior to his trial.  It is unnecessary, however, to decide whether this evidence qualifies as "new."  *See Stimpson v. Warden*, 2025 WL 484049, at *3 (11th Cir. Feb. 13, 2025) ("In establishing an actual innocence exception to procedural default, the Supreme Court explained that 'new evidence' of actual innocence includes 'evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 328 (1995))).  Even assuming for argument only that this excluded evidence could be treated as "new" for *Schlup* purposes, Petitioner's own characterization of it as impeachment evidence forecloses reliance on the actual-innocence gateway.

Petitioner argued on direct appeal that the trial court erred in denying his pretrial motion for a continuance to locate the CAC video and the victim's mother "because it was likely that the mother's testimony and the CAC video would have been used to impeach the victim's testimony."  (Doc. # 13-7 at 14.)  Impeachment

26

evidence "is a step removed from evidence pertaining to the crime itself" and thus "provides no basis for finding a miscarriage of justice." *Calderon v. Thompson*, 523 U.S. 538, 563 (1998); *see also Jasmin v. Fla. Dep't of Corr.*, 2025 WL 3786307, at *1 (11th Cir. July 10, 2025) ("Newly discovered impeachment evidence provides no basis for finding actual innocence."); *Shaw v. Sec'y, Dep't of Corr.*, 2026 WL 503338, at *3 (M.D. Fla. Feb. 24, 2026) (finding that the petitioner failed to present new reliable evidence by claiming that the victim's prior statements contradicted her allegations of sexual abuse and "[a]t best, such evidence would impeach the victim's testimony"). Petitioner's liberally construed attempt to invoke actual innocence to bypass the expired one-year limitation period fails because, by Petitioner's own argument, the proffered evidence would serve, at most, to impeach the victim's testimony. Case law makes clear that even newly discovered impeachment evidence is insufficient to satisfy the actual-innocence gateway. Accordingly, Petitioner cannot reap the benefit of the actual-innocence exception, and his claims are time-barred.

## V.  CONCLUSION

Petitioner did not file this 28 U.S.C. § 2254 petition for a writ of habeas corpus within the AEDPA's one-year limitation period, *see* 28 U.S.C. § 2244(d)(1), and he has not shown that statutory tolling renders the petition timely, that equitable tolling

applies, or that the fundamental-miscarriage-of-justice exception excuses the untimeliness. Therefore, the petition must be dismissed with prejudice.

A prisoner seeking a writ of habeas corpus does not have an automatic right to appeal a district court's denial of the petition. *See* 28 U.S.C. § 2253(c)(1). Pursuant to Rule 11(a) of the *Rules Governing Section 2254 Cases in the United States District Courts*, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see* § 2253(c). Therefore, Petitioner will be denied a certificate of appealability.

Based on the foregoing, it is ORDERED that Petitioner Gregory Wayne Carver's 28 U.S.C. § 2254 petition is DISMISSED with prejudice and that Petitioner is DENIED a certificate of appealability.

Final judgment will be entered separately.

DONE this 8th day of July, 2026.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE

28